UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ANDREA R CAVAZOS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 5-10-65 |
| | § | |
| JAIME ZAPATA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court are: "Defendants Laredo Texas Hospital Company, L.P. d/b/a Laredo Medical Center and Charles Niziol, M.D.'s Joint Motion for Partial Summary Judgment Based On No Recognized Cause of Action for Stillborn Delivery" [Dkt. No. 47][1]; "Defendants Laredo Texas Hospital Company, L.P. d/b/a Laredo Medical Center and Charles Niziol, M.D.'s Joint Motion for Summary Judgment" [Dkt. No. 48]; and "Defendant United States of America's Motion for Partial Summary Judgment"  [Dkt. No. 52].  For the reasons stated herein, Laredo Medical Center and Charles Niziol, M.D.'s Joint Motion for Partial Summary Judgment [Dkt. No. 47] and Defendant United States of America's Motion for Partial Summary Judgment [Dkt. No. 52], are **GRANTED** and LMC Defendants' Joint Motion for Summary Judgment [Dkt. No. 48] is **DENIED**.

## I.   RELEVANT FACTS AND PROCEDURAL HISTORY

This case involves claims of negligence against defendant the United States of America ("United States") arising out of a motor vehicle accident involving a vehicle in which plaintiff Andrea Cavazos ("Ms. Cavazos") was riding as a passenger and a vehicle owned by the United

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.

States.  The vehicle was being operated by a government employee within the course and scope of his employment for the United States at the time of the accident.  [Dkt. Nos. 46 at 5; 51 at 4]. This case also involves claims of negligence against defendant Laredo Texas Hospital Company, L.P., d/b/a Laredo Medical Center, ("LMC") and defendant Charles Niziol, M.D. ("Dr. Niziol") (LMC and Dr. Niziol jointly referred to as "LMC Defendants") arising from the emergency medical treatment that Ms. Cavazos received from the LMC Defendants subsequent to the aforementioned motor vehicle accident.  [Dkt. No. 46 at 6-11].  At the time of the accident, Ms. Cavazos was pregnant with a male fetus ("Baby Luis") that was stillborn during a premature delivery within a few hours of the motor vehicle accident.  [Dkt. Nos. 57 at 2; 47 at 2; 52 at 7].

Ms. Cavazos; her parents, Carlos D. Cavazos and Yvonne M. Cavazos; and the father of Baby Luis, Luis Alfredo Arteaga ("Mr. Arteaga") (collectively referred to as "Plaintiffs), are named as plaintiffs in this case, both as individuals and as heirs to Baby Luis.  [Dkt. No. 46 at 1].

## II.    DISCUSSION

### a.  *Standard for Summary Judgment*

The Federal Rules of Civil Procedure provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment must meet the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those facts which might affect the outcome of the suit in light of the governing law.  *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  "[T]he burden on the moving party may be discharged by "showing" –that is, pointing out to the district court– that there is an

absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. After a properly supported motion for summary judgment has been filed, the non-moving party may oppose the motion with a responsive pleading that sets out specific facts in an attempt to show that a genuine issue exists between the parties and that the case should proceed to trial.

### b. *LMC Defendant's Motion for Partial Summary Judgment*

In their motion for partial summary judgment, the LMC Defendants argue that they are entitled to partial summary judgment on the wrongful death and survival claims alleged by Plaintiffs because "Texas law does not recognize a wrongful death or survival cause of action against a physician or healthcare provider for the death of a stillborn fetus." [Dkt. No. 47 at 3]. In their response, Plaintiffs concede that they do not have a survivorship or a wrongful death cause of action against the LMC Defendants. [Dkt. No. 57 at 2-3]. Because there is no genuine issue of material fact on the matter of Plaintiffs' survivorship and wrongful death claims against the LMC Defendants, the LMC Defendants are entitled to summary judgment on those claims.

### c. *United States' Motion for Partial Summary Judgment*

In the United States' motion for partial summary judgment, the United States moves for summary judgment on the survivorship claims of Plaintiffs because there is no cause of action under the Texas survival statute for the death of a stillborn baby. [Dkt. No. 52 at 10]. Thus, the United States concludes, all claims based on Plaintiffs' status as heirs of Baby Luis "must be dismissed from this suit as against the United States." [*Id.*]. In their response to the United States' Motion for partial summary judgment, Plaintiffs concede "that they do not have a survivorship cause of action in their capacity as heirs of Baby Luis against the Defendant United States." [Dkt. No. 56 at 2]. Because there is no genuine issue of material fact on the issue of

Plaintiffs' survivorship claims as heirs of Baby Luis, the United States is entitled to summary judgment on these claims.

The United States also moves for summary judgment on the wrongful death claims of Carlos D. Cavazos and Yvonne M. Cavazos.   [Dkt. No. 52 at 10].   The United States acknowledges that the Texas Wrongful Death Act now allows for a wrongful death cause of action in the death of a stillborn child, but also points out that such an action is limited to the surviving parents of the stillborn child.   [*Id.*] (citing Texas Civil Practice and Remedy Code § 71.004(a) and *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 97 (Tex. 2004)). Thus, the United States concludes, Carlos D. Cavazos and Yvonne M. Cavazos, as grandparents of Baby Luis, do not have standing to bring suit against the United States and should be dismissed from this suit in their individual capacities.   [Dkt. No. 52 at 10].

In their response, Plaintiffs concede that "the wrongful death cause of action for the stillborn child is for the exclusive benefit of the surviving parents" and conclude that "it appears that the grandparents, Plaintiffs Carlos D. Cavazos and Yvonne M. Cavazos, do not have standing."  [Dkt. No. 56 at 3].  Because no issue of material fact remains as to the wrongful death claims of Carlos D. Cavazos and Yvonne M. Cavazos, the United States is entitled to summary judgment on these claims.   Because summary judgment has been granted in favor of the defendants on the only claims that Carlos D. Cavazos and Yvonne M. Cavazos brought against the defendants in this case, Carlos D. Cavazos and Yvonne M. Cavazos are hereby dismissed as parties to this case.

### d.  *LMC Defendant's Motion for Summary Judgment*

Plaintiffs base their negligence claims against the LMC Defendants on a theory of medical malpractice.  [Dkt. No. 46 at 6].  In making such a claim Plaintiffs have the burden of

proving: "(1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury, and (4) a causal connection between the breach of care and the injury." *Quijano v. U.S.*, 325 F.3d 564, 567 (5th Cir. 2003).  In order to meet their burden on the "causal connection" element, Plaintiffs must show a reasonable medical probability that the alleged negligence of one or more of the LMC Defendants was a proximate cause of Plaintiffs' injuries.  *Young v. Memorial Hermann Hosp. System*, 573 F.3d 233, 235 (5th Cir. 2009); *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005). In their motion for summary judgment the LMC Defendants attack only the issue of proximate cause, claiming that "there is no material issue of fact as to causation between [LMC] Defendants' conduct and Plaintiffs' claimed injuries." [Dkt. No. 48 at 1-2].

Initially, the Court would like to narrow the analysis in this Opinion to the injuries on which Ms. Cavazos and Mr. Arteaga can hope to recover from the LMC Defendants.  As noted above, both parties have conceded that Plaintiffs (including Ms. Cavazos and Mr. Arteaga) cannot recover on a wrongful death or survival cause of action against a physician or healthcare provider for the death of a stillborn fetus because Texas law does not recognize such a claim. Plaintiffs' remaining claims (with no distinction among plaintiffs) include past and future physical pain, mental anguish, physical disfigurement, loss of earnings, loss of earning capacity, physical impairment, reasonable and necessary hospital, doctor, and other medical expenses, loss of household services, loss of consortium, and other actual and special damages as well as pre- and post-judgment interest. [Dkt. No. 46 at 9].  Similarly, the LMC Defendants' motion for summary judgment does not distinguish between Ms. Cavazos' claims and Mr. Arteaga's.

The Court, however, will narrow its analysis in this opinion to the claims that Ms. Cavazos has against the LMC Defendants for the personal injuries that she has allegedly suffered

as a result of the LMC Defendants' alleged negligence, including any claims she might have for personal mental anguish suffered as the result of the loss of her fetus.[2]  As to the mental anguish claims, the Supreme Court of Texas has recognized that a mother may recover mental anguish damages suffered as a result of an injury, which includes the loss of a fetus, where the negligent treatment of a physician was the proximate cause of that injury.  *Krishnan v. Sepulveda*, 916 S.W. 2d 478, 482 (Texas 1995).  However, as the court recognized in *Krishnan*, the father of a stillborn fetus may not recover mental anguish damages for his suffering as a result of the mother's injuries.  *Id*.

Ms. Cavazos limits her negligence claims against the LMC Defendants "to the care and time she spent in the LMC's emergency room," including the allegedly negligent care that she received from Dr. Niziol.  [Dkt. No. 58 at 7, 19].  Thus, in order to overcome the LMC Defendants' motion for summary judgment, Ms. Cavazos will have to offer factual evidence that shows that a genuine issue of material fact exists between the parties as to whether the alleged negligence of Dr. Niziol and the emergency room ("ER") staff was a proximate cause of Ms. Cavazos' injuries.

The LMC Defendants base their assertion that "there is no material issue of fact as to causation between [LMC] Defendants' conduct and Plaintiffs' claimed injuries" on evidence that: (1) Dr. Gonzalez, the Plaintiffs' expert witness and the doctor who delivered Baby Luis, does not criticize the care that Ms. Cavazos received in the ER;  (2) that Dr. Gonzalez' testimony establishes that a C-section, or any other measure that could have alleviated or eliminated Ms. Cavazos' injuries, would not have been performed sooner, thus negating the effect of any alleged delay; and (3) that  the motor vehicle accident triggered a chain of events which the LMC

---

[2] The Court concentrates on Ms. Cavazos' claims as it is questionable whether Mr. Arteaga has any claims against the LMC Defendants.  However, as the LMC Defendants have not specifically moved for summary judgment as against Mr. Arteaga, the Court does not rule on his claims.

Defendants were powerless to stop, that ultimately led to all of the harms alleged in the complaint, and that Ms. Cavazos' injuries were an inevitable result of the motor vehicle accident. [Dkt. No. 49 at 8, 14].

As to their first claim, evidence that Dr. Gonzalez has remained silent on the issue of Dr. Niziol and the LMC ER's negligence amounts to nothing more than evidence that *part* of the record, i.e. Dr. Gonzalez' deposition testimony and expert report, lacks evidence regarding the standard of care in the ER.  As the LMC Defendants do not attack the issue of the ER standard of care, Dr. Gonzalez' silence is irrelevant.  Further, the question on summary judgment is not whether one or two areas of the record display absence of a genuine issue of material fact, it is whether "the record *taken as a whole* could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added).  The LMC Defendants' claim that Dr. Gonzalez has not opined on the treatment that Ms. Cavazos received at the hands of the LMC ER staff and Dr. Niziol is not sufficient evidence to show that there is an absence of a material fact on the issue of causation.  Further, while unnecessary, Plaintiffs have offered their own expert's testimony as to the ER standard of care and the alleged breach.  [Dkt. No. 58 at 10].  However, more important than what Dr. Gonzalez did not say is what Dr. Gonzalez *did* say that raise issues on causation.

As the LMC Defendants' primary focus is on the alleged delay in the ER, the court will address that issue.  The LMC Defendants' claim that Dr. Gonzalez' deposition testimony and expert report establish that he *would not* have performed a C-section sooner than he actually did and that, once Ms. Cavazos was involved in the motor vehicle accident, every injury that Ms. Cavazos suffered was inevitable.

Plaintiffs are alleging that the negligence of Dr. Niziol and the ER staff resulted in a delay in assessing the condition of Ms. Cavazos' fetus following the motor vehicle accident and a delay in getting Ms. Cavazos to labor and delivery ("L&D").  Plaintiffs further allege that such delays were a proximate cause of Ms. Cavazos' personal injuries; injuries that include having to suffer through labor and painful incisions, without the aid of an anesthetic or the option of a C-section, and the mental anguish that she personally endured as a result of losing her fetus.  As evidence supporting their claims, Plaintiffs offer the deposition testimony of Dr. Kennedy that "had the ER met the standard of care I believe a C-section would have been done," the deposition testimony of Dr. Irwin that "if [Ms. Cavazos] had been placed on the [fetal] monitor [20 or 30 minutes sooner than she was], I'm absolutely of the opinion it would have shown fetal distress" (warranting a C-section), and the deposition testimony of Dr. Gonzalez that, if he had had more time, he would have been able to administer an anesthetic to Ms. Cavazos.  [Dkt. No. 59 at 24, Deposition Testimony of Dr. Kennedy at p. 89; Dkt. No. 63 at 17, Deposition Testimony of Dr. Irwin at p. 59; and Dkt. No. 63-1 at 21, Deposition Testimony of Dr. Gonzalez at p. 103].[3]

The LMC Defendants counter that in the face of Dr. Gonzalez' deposition testimony and expert report, evidence of what would have happened is of no consequence.  [Dkt. No. 66 at 3, 19-20].  This is because the LMC Defendants read Dr. Gonzalez' testimony as proof that a C-section would not have been attempted any sooner than it was, no matter what.  As evidence that the C-section would not have been performed any sooner than it was, the LMC Defendants allege that "the doctor found a stable patient upon first seeing Ms. Cavazos, assessed the [fetal]

---

[3] The Court notes the habit of both the Plaintiffs and the LMC Defendants of attaching entire depositions to their various filings while citing to distinct and relatively small portions of those depositions.  For the sake of efficiency, the parties should limit their attachments to the cited portions of the depositions, including the proper verification and only the relevant portions that are necessary to provide context to the specific quotes.

monitoring strip that was running and examined the patient, and did not decide to perform a C-section until a dramatic change in the patient's condition manifested itself in four separate, serious developments."  [Dkt. No. 66 at 16].  The LMC Defendants allege that this "dramatic change" consisted of four factors that occurred *after* Dr. Gonzalez arrived to assess Ms. Cavazos and that Dr. Gonzalez would not have performed a C-section prior to those four factors arising. Thus, the LMC Defendants conclude, Dr. Gonzalez was "the all important intervening figure," without whom prophylactic measures in the L&D could not have been pursued.  [Dkt. No. 66 at 20].  But this conclusion and analysis of Dr. Gonzalez' testimony is the result of a strained reading of that testimony, at best.

The four factors that the LMC Defendants allege happened after Dr. Gonzalez' arrival to assess Ms. Cavazos are: (1) a change in the heart rate on the fetal monitor from reassuring to non-reassuring; (2) ruptured membranes and consequent presence of amniotic fluid; (3) blood in the amniotic fluid; and (4) an increase in Ms. Cavazos' abdominal pain.  Upon examination of the testimony of Dr. Gonzalez, it is not clear that *any* of these factors, let alone *all* of these factors, were not present before Dr. Gonzalez' arrival.

For instance, as to the change in the assessment of the fetal monitoring strip from reassuring to not reassuring, Dr. Gonzalez testifies that when he first arrived "they had just put [Ms. Cavazos] on the . . . EFM monitor.  And I was standing . . . outside the patient's room looking at [the EFM] monitor . . . And I was trying to, you know, looking at the fetal strip and trying to figure out what's going on."  [Dkt. No. 63 – 1 at 10, Deposition Testimony of Dr. Gonzalez at p.42-43].  Dr. Gonzalez continues "Well, I was watching the fetal strip . . . I allowed the fetal strip to kind of settle out and see where – what was going on . . . And ***immediately*** I discovered that the fetal strip was non-reassuring.  So I went immediately into the room to assess

the patient." [Dkt. No. 63 – 1 at 10, Deposition Testimony of Dr. Gonzalez at p.43] (emphasis added). Dr. Gonzalez then testifies that he did a "quick assessment [of Ms. Cavazos] because [Dr. Gonzalez] knew there was *already* fetal distress occurring." [Dkt. No. 63 – 1 at 10, Deposition Testimony of Dr. Gonzalez at p.44] (emphasis added).

Dr. Gonzalez further testifies that he tried to determine whether the monitor was tracking the fetal heart rate or the mother's heart rate, that he initially thought the readout was reassuring as to the mother's hear rate, and then "after a short amount of time" Dr. Gonzalez realized that the monitor was tracking the fetus and not the mother and then he "got concerned that it was not reassuring." [Dkt. No. 63 – 1 at 10, Deposition Testimony of Dr. Gonzalez at p.44]. When the attorney deposing Dr. Gonzalez latches on to the idea that Dr. Gonzalez initially thought the readings were reassuring, Dr. Gonzalez clarifies that "this all happened at almost the same time. You know, I was looking at the strip and walked into the patient's room immediately." [Dkt. No. 63 – 1 at 11, Deposition Testimony of Dr. Gonzalez at p.47]. It is clear from Dr. Gonzalez' deposition testimony that he became aware of the distressed fetus and the precarious condition of Ms. Cavazos within minutes, or less, of his arrival, and well within a reasonable time frame of his initial assessment of Ms. Cavazos and her fetus. Dr. Gonzalez' testimony does not preclude an earlier diagnosis of the distressed condition of the fetus and Ms. Cavazos had Ms. Cavazos arrived in L&D sooner.

Furthermore, Plaintiffs allege, and have offered evidence, that the LMC Defendants breached the standard of care in the ER not just by delaying transfer, but by failing to monitor the fetal heart tones in the ER in the absence of an immediate transfer. [Dkt. No. 58 at 11-12]. Such evidence raises a genuine issue of material fact on the issue of causation when viewed in

light of Dr. Gonzalez' testimony that almost "immediately" upon review of the strip he discovered that it was non-reassuring.

As to the second factor listed by the LMC Defendants, the ruptured membranes and resulting presence of amniotic fluid, Dr. Gonzalez' testimony is clear that this could have happened before or after he arrived.  [Dkt. No. 63-1 at 12, Deposition Testimony of Dr. Gonzalez at p.51].  Even more telling, while discussing the ruptured membranes, the attorney questioning Dr. Gonzalez asked him the question "Did you feel when . . . Ms. Cavazos had her ruptured membranes that she was going to continue her pregnancy?" to which Dr. Gonzalez replied "With the ominous fetal heart rate, no."  [Dkt. No. 63-1 at 13, Deposition Testimony of Dr. Gonzalez at p.54].  Clearly Dr. Gonzalez' testimony at least raises a fact issue that it was the "ominous fetal heart rate," perhaps coupled with the ruptured membranes, which led to his conclusion that Ms. Cavazos' pregnancy would not continue.  In fact, Dr. Gonzalez testified that with just the ominous fetal heart rate and ruptured membranes he "felt that there was a process occurring that required immediate delivery."  [*Id*.].  Because Dr. Gonzalez discovered the ominous fetal heart rate and the ruptured membranes during his initial assessment of Ms. Cavazos and her fetus, the possibility remains that these indicators could have been discovered sooner.

Contrary to the claims of the LMC Defendants in their motion for summary judgment and in their reply to Plaintiffs' response to that motion, Dr. Gonzalez' testimony does not exclude the probability that, had he performed his initial assessment sooner, he could have decided to perform the C-section and administer anesthesia sooner, thus avoiding at least some of the injuries alleged by Plaintiffs.  Thus, there is a genuine issue of material fact that the alleged

negligence on the part of the ER staff or Dr. Niziol that led to a delay in Ms. Cavazos' arrival at L&D could have led to the injuries sustained by Ms. Cavazos.

The LMC Defendants also imply that Dr. Gonzalez' deposition testimony establishes that Dr. Gonzalez is of the opinion that the motor vehicle accident was the only cause of all of Ms. Cavazos' injuries, and that once that accident occurred, there was nothing anyone could do to avoid the injuries that Ms. Cavazos suffered.   For that proposition, they quote the following excerpt from Dr. Gonzalez' deposition testimony:

> Q: I asked you about whether there was anything that could be done in [Ms. Cavazos'] situation that would have prevented the rupture of her membranes.  I want to make it a little broader.  Do you believe that there was any medical intervention that you could have done that after [Ms. Cavazos] was involved in a motor vehicle accident, that would have prevented her from losing her fetus?

> A: Losing her fetus, I think that – I don't think I can answer that question.  But if you asked if there was any medical intervention that I could have done that would have – could have prevented the ensuing events that occurred, such as labor, no.

Excerpts such as this one, that the LMC Defendants quote from Dr. Gonzalez' testimony on the issue of what effects were a result of the motor vehicle accident, only establish that, once Ms. Cavazos was in the motor vehicle accident, Dr. Gonzalez does not believe that he could have stopped her from going into labor.  But Plaintiffs claims are not limited to injuries Ms. Cavazos may have suffered from going into labor.   Plaintiffs are alleging that delay caused by the negligence of the ER staff and Dr. Niziol led to avoidable injury to Ms. Cavazos.   In these excerpts, Dr. Gonzalez' does not opine on what injuries could have been avoided by medical intervention occurring earlier in the process that ended in an emergency delivery without anesthesia.

### III.     CONCLUSION

Because no genuine issue of material fact remains as to the wrongful death claims of Carlos D. Cavazos and Yvonne M. Cavazos and no issue of material fact remains on the issue of Plaintiffs' survivorship claims as heirs of Baby Luis, Defendant United States of America's Motion for Partial Summary Judgment [Dkt. No. 52] is **GRANTED**.  Further, as no genuine issue of material fact remains on the matter of Plaintiffs' survivorship and wrongful death claims against the LMC Defendants, Laredo Medical Center and Charles Niziol, M.D.'s Joint Motion for Partial Summary Judgment [Dkt. No. 47] is **GRANTED**.  Because an issue of material fact remains between the parties as to whether negligence on the part of Dr. Niziol and the LMC ER staff caused injury to Ms. Cavazos, LMC Defendants' Joint Motion for Summary Judgment [Dkt. No. 48] is **DENIED**.

IT IS SO ORDERED.

DONE this 8th day of September, 2011, in McAllen, Texas.


_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE